## ALLIANCE LIFE INS. CO. v. SALIBA.*

No. 10674.

Circuit Court of Appeals, Eighth Circuit.

Feb. 11, 1937.

Clinton R. Barry, of Fort Smith, Ark. (Loyd Shouse and W. S. Walker, both of

Harrison, Ark., on the brief), for appellant.

Virgil D. Willis, of Harrison, Ark., for appellee.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

In 1926, Saliba took out a life insurance policy in the Old Colony Life Insurance Company of Chicago, Ill., which provided for a payment of $10,000 upon his death and also for monthly disability income payments of $100. Thereafter, the disability under the policy occurred and the claim therefor resulted in an action on the policy by him in a state court. Without trial, the parties agreed upon a settlement which was embodied in a consent decree. This settlement provided that the existing policy should be canceled and delivered up to the company and that a new policy of the same number should be issued with a provision acknowledging the disability and agreeing to the monthly payments during life and to waiver of further premium payment. These payments and further premiums were to be charged (without interest) against the face amount ($10,-000.00) of the policy and any balance left on death of Saliba was to be paid to the beneficiary. In compliance with the settlement, the old policy was surrendered and a new policy in the same terms delivered upon which was the indorsement following:

"Indorsement.

"Chicago, Illinois, December 18, 1930.

"Due proof of the total and permanent disability of Daibes A. Saliba, the insured hereunder, having been received at the Home Office of the Company, payment of the premium falling due hereon on the 14th day of May, 1930, and the payment of all premiums falling due hereunder subsequent to said date are hereby waived. The company will also pay to insured the Monthly Disability Income of $100.00 per month, in accordance with the terms and provisions of the Disability Clause of this contract, the first payment to be made as of the first day of February, 1930.

"This indorsement and the waiver of premiums and the payments of Monthly Disability Income to be made as above stated, are made in pursuance of a certain stipulation or agreement entered into on the 9th day of December, 1930, by and between the solicitors of the respective

*Rehearing denied March 19, 1937.

parties in a certain cause then pending in the Circuit Court of Houston County, Alabama, on the Chancery side thereof, wherein the Old Colony Life Insurance Company, a corporation, is complainant and Daibes A. Saliba and his wife, Habka Saliba are respondents."

Back payments due under this arrangement and monthly payments thereafter were made until September, 1932. Shortly thereafter the insurance company went into the hands of receivers under the laws of Illinois.. The receivers entered into a reinsurance contract with the Life & Casualty Company of Chicago (the former name of appellant). A certificate of assumption of liability on this policy was issued by the reinsurer to appellee in the amount of $6,556.10 and attached to the policy, the above reinsurance contract being made a part of the certificate.

This action is against the reinsurer for $2,800 (the past-due monthly disability installments), a statutory penalty of 12 per cent., and a reasonable attorney's fee. To this petition a demurrer was filed upon the ground that the petition did not state a cause of action. The demurrer was overruled, issue joined, jury waived, evidence introduced, and judgment entered for plaintiff for $2,800 and interest of $189. From that judgment, defendant brings this appeal.

The brief of appellant states two issues here. One of these, an attack upon the sufficiency of the evidence, was abandoned. It could not have been presented because a jury was waived and there was no request for findings or motion for judgment on the evidence by appellant. Becher v. Sidner, 87 F.(2d) 899 (C.C.A. 8); Fierce v. Wyatt, 83 F.(2d) 892, 893 (C.A.8).

The issue open for presentation here is the sufficiency of the petition to state a cause of action against appellant. The controversy as to this issue is confined to whether this insurance contract was assumed by appellant in so far as disability payments are concerned.

The legal connection of and the relation between these parties arises from a certificate sent appellee by appellant to which was attached a reinsurance agreement which was expressly made a part of the certificate[1]. The reinsurance agreement was the general contract between appellant and the receivers of the Old Colony Life Insurance Company which was an extended and comprehensive instrument covering seven pages of this printed record and dealing with many matters.

Appellant argues that this case turns upon the proper construction of this reinsurance contract. In a sense this is true, but it must not ignore the effect of the certificate upon such construction.

The argument of appellant is not that it did not assume any obligation whatsoever in connection with this policy, but it is that it assumed no obligation as to disability payments. It contends that "under the life insurance policy the appellee was simply a policyholder with his wife as

[1] The certificate is as follows:
"Life and Casualty Company of Chicago
"750 North Michigan Avenue
"Chicago, Illinois
"This Certificate Forms a Part of Your Policy and Should Be Attached Thereto
"This is to Certify that the policy mentioned herein, issued or assumed by the Old Colony Life Insurance Company, Chicago, Illinois, has been assumed by the Life and Casualty Company of Chicago, Chicago, Illinois, subject to the conditions of the policy and to the terms of the reinsurance agreement, a copy of which is attached hereto and made a part hereof, and all future amendments thereto, conditioned upon the Insured paying the premiums to Life and Casualty Company of Chicago in the amounts and on the terms required by said policy.
"This policy is issued in the amount of $6556.10. The amount of Lien as of September twentieth, nineteen hundred and thirty-two $1091.00. Any payment of premium and/or interest on said policy may be made to the Life and Casualty Company of Chicago and will constitute, evidence and be construed as acceptance by the Insured of all and singular of the terms, limitations and conditions of the within agreement and no other evidence of acceptance thereby will be required.
"In Witness Whereof, this ——— day of January, 1933, the signatures of the President and Secretary of the Life and Casualty Company of Chicago are affixed hereto.
"Life & Casualty Company of Chicago,
"M. A. Kern, President.
"L. D. Kern, Secretary.
"Policy Number 69716
"Daibis A. Saliba
"307 S. St. Andrews
"Daothon Ala."

beneficiary. Under the judgment and contract he was simply a general creditor." It is upon this "distinction between appellee's rights as a creditor and his rights against appellant as a policyholder of the Old Colony Company" that appellant relies to show that liability for these disability payments was not assumed.

This argument that the obligations under this policy can be separated and payment on death to the beneficiary assumed and payment to insured of disability installments not assumed is ingenious and pressed with zeal and skill. Whether it could have been done is beside the question here of whether it was done. There are provisions in the reinsurance contract which, considered alone, seem to sustain appellant. Probably the strongest expression of that kind is as follows:

"Fourth: As to all contracts assumed and taken over by Life and Casualty, the Receivers shall pay or deliver to Life and Casualty cash in an amount equal to the full amount of all premiums heretofore or hereafter collected or received by said Receivers, including extra premiums and premiums for double indemnity and disability, if any, due on or after September 20, 1932, such payment or delivery to be made immediately upon receipt, it being intended that this agreement shall cover, as and from September 20, 1932, all policy contracts of Old Colony then in force and *unmatured,* and all its policy contracts not then in force but subsequently reinstated pursuant to the terms thereof." (Italics inserted.)

However, another provision[2] covers paid-up insurance, which certainly is one form of "matured" insurance, and also includes "supplementary contracts" which certainly would or well might include the indorsement on this policy. The most that can be said of the reinsurance contract is that it is ambiguous in so far as obligations of the kind before us is concerned. If the case here were one where no certificate had been issued and appellee were seeking recognition of a right to come under the reinsurance agreement, we would have a problem of construction more difficult than the one now before us. Here we are materially aided by the legal effect of the issuance of this certificate.

The certificate itself contains no express segregation of obligations nor any suggestion thereof. When we consider its terms and the situation to which it applied, the natural inference is to the contrary. The face of this policy was $10,000 payable to the beneficiary. Under the disability provisions, the policy provided that premiums waived and disability income paid should be deducted and only the balance paid the beneficiary on death. Also, that when the aggregate of such waived premiums and disability payments reached $10,000 the policy should be satisfied. The indorsement on the policy was a waiver of premium payments and an acknowledgment of disability liability from February 1, 1930. Allowing for the premiums so waived, the payments so made, and the lien provided for by the reinsurance agreement[3], the face value of the policy at the

[2] This provision is as follows:

"First: Life and Casualty does hereby reinsure and assume (subject to the lien, terms, conditions and provisions and to the extent hereinafter specifically provided) all policies of insurance of Old Colony in force on September 20, 1932, including all annuity and/or supplementary contracts and extended term and paid-up insurance in force by their terms on said date, and (except as herein provided) to carry out all the provisions and agreements contained in said policies, subject to any and all defenses against claims under or actions upon said policies which Old Colony rightfully might have asserted had this contract not been made, and subject to the lien hereinafter specified."

[3] The provision in the reinsurance contract as to this lien is as follows:

"Second: As part of the consideration moving the Life and Casualty to execute this contract and to assume the liabilities herein assumed, there is hereby established and placed against each policy and contract reinsured and assumed by Life and Casualty hereunder a lien equal to the full legal reserve thereof (including dividend and coupon additions and accumulations and an adequate reserve for disability and double indemnity benefits, if any) as such reserve has been or under the laws of the State of Illinois should have been established and carried by Old Colony on the 20th day of September, 1932. The amount of such lien shall bear interest at the rate of Three and One-half per cent ($3\frac{1}{2}\%$) per annum, compounded annually, both the lien as reduced from time to time as hereinafter provided and the interest thereon (which interest shall be a part of said lien) to be deducted from any payment made by Life and Casualty pursuant to the terms of said policies and from any

time the certificate was issued was $6,-556.10. The certificate reads, "This policy is issued in the amount of $6,556.10. The amount of lien as of September twentieth, nineteen hundred and thirty-two $1091.00." The certificate follows carefully and accepts the results brought about by the policy and by the indorsement. Also, it applies the lien provision of the reinsurance agreement in reduction of the liability under the policy. Containing such provisions, the certificate was clearly an adoption of the policy as being within the reinsurance agreement. As such, it was a construction by the parties of the meaning of the reinsurance contract which, as to the matter here involved, was no better than ambiguous.

In this adoption and this construction, there is no suggestion of any dissection or segregation of obligations contained in the policy—it is treated as a unit. We can discover no reason in the reinsurance contract why it can be held otherwise. In fact, it would be quite difficult to separate the obligations of the policy to bring about the result contended for by appellant. The indorsement on the policy was as much a part of that contract as any other provision. It carried a waiver of premiums and a payment of disability benefits. Appellant seeks to avoid payment of the benefits. Does it also seek to avoid the other provision of the indorsement as to waiver of premiums? Is it seeking to entirely eliminate all effect of the indorsement? These questions are not immediately in issue here, but they are suggestive that a contract vitally different from the policy is contended for here. We do not challenge the right of a reinsurer to accept or reject such policies as it may see fit or to accept them with such conditions and limitations as it may choose to impose under applicable law. What we say is that where, as here, acceptance of a policy is without qualification and the reinsurance contract is ambiguous it will not be presumed that the policy as written is not accepted in entirety. The act of appellant is, as to this policy, a construction of the reinsurance contract which should be accepted and followed.

Without setting forth the petition, we have discussed above only such facts as are contained therein. The demurrer was properly overruled.

The judgment is affirmed.

loan thereon and from any other disbursement required by the terms of said policies, if any, except as otherwise hereinafter expressly provided. The interest payable on account of the lien against any policy issued by Old Colony and on which a premium is received by Life and Casualty subsequent to September. 20, 1932, shall be treated as a policy loan if such interest be not paid, and such interest, paid or unpaid (less only the amount necessary to maintain the increase in the reserve on a 3½% basis), shall be deemed a part of the proceeds of liquidation hereinafter mentioned."